# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 7709 | **DATE** | February 7, 2012 |
| **CASE TITLE** | PFG Precious Metals, Inc. v. SunTrust Bank, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons provided in the Statement section of this Order, "Third Party Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss" [51] is denied. The scheduling order set by this court on Feb. 6, 2012 [62] remains in effect. The parties are encouraged to discuss settlement.

■[ For further details see text below.]   Notices mailed by Judicial staff.

# STATEMENT

Before the court is "Third-Party Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss." (Dkt. No. 51 (Third-Party Def.'s Mot. to Dismiss).) For the reasons that follow, the motion is denied.

SunTrust Bank ("SunTrust") brought this third-party complaint against JPMorgan Chase ("JPMorgan") after it was sued by PFG Precious Metals ("PFG"), an Illinois corporation that sells precious metals. PFG brought suit against SunTrust and Capital One, N.A. after the banks reversed electronic payments that had been made on behalf of people PFG believed to be customers buying gold coins. (Dkt. No. 1, Ex. 1. (Pl.'s Compl.).) SunTrust removed the PFG suit from the Circuit Court of Cook County to this court on the basis of diversity jurisdiction (Dkt. No. 1), and subsequently brought the third-party complaint against JPMorgan at issue here.[1]

JPMorgan moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), contending that PFG's complaint against SunTrust is based solely on SunTrust's own improper conduct, and JPMorgan is not required to indemnify SunTrust for that conduct. (Third-Party Def.'s Mot. to Dismiss, 1–2.) SunTrust contends that it was complying with National Automated Clearing House Association ("NACHA") rules when it reversed the transaction at issue, and that JPMorgan, which originated the transaction, is obligated under NACHA rules to indemnify it.[2] (Dkt. No. 57 (Third-Party Pl.'s Resp., 2–3.))

All Automatic Clearing House ("ACH") transactions, like the one at issue here, are governed by NACHA Operating Rules. *Sec. First Network Bank v. C.A.P.S., Inc.*, No. 01 C 342, 2003 WL 22299011, at *3 (N.D. Ill. Oct. 7, 2003); *see* 10A Hawkland UCC Series § 5:8 (explaining that the ACH system is governed by agreement, NACHA rules and ACH Operator Rules). Case law interpreting the NACHA rules is sparse, and the parties here primarily rely on two cases, *Sec. First Network Bank* and *Bank of Arkansas v. MANA Corp.*, 58 S.W.3d 366 (Ark. 2001).

By way of background, there are typically five participants in an ACH transaction: (1) the originating company or person ("Originator"); (2) the Originating Depository Financial Institution ("ODFI"); (3) the ACH Operator; (4) the Receiving Depository Financial Institution ("RDFI"); and (5) the receiving company

| STATEMENT |
|---|

or individual ("Receiver"). *Sec. First Network Bank*, 2003 WL 22299011, at *3 (citing 2000 ACH Rules, an ACH Primer, at 1). An ACH transaction begins when the Receiver authorizes an Originator to initiate an ACH entry to the Receiver's account with the RDFI. *Id.* The Originator agrees to initiate ACH entries according to its arrangement with the Receiver. *Id.* The ODFI receives payment instructions from the Originator and forwards that entry to the ACH Operator, which is a central clearinghouse that forwards the ACH entry to the RDFI. *Id.*

In its Third-Party Complaint, which the court accepts as true at this stage of the case, SunTrust alleges that PFG was a customer and account holder at JPMorgan. (Third-Party Compl. ¶ 3.) Joy Perkins was a customer and account holder at SunTrust. (*Id.* ¶ 4.) On June 23, 2010, PFG originated an ACH debit transaction with JPMorgan involving the transfer of $95,000 from Perkins' account at SunTrust to PFG's account at JPMorgan (the "Perkins transaction"). (*Id.* ¶ 5.) JPMorgan originated the ACH debit entry for the transfer of $95,000 from Perkins' account at SunTrust. (*Id.* ¶ 6.) SunTrust accepted the ACH debit transaction, which transferred $95,000 from Perkins' account at SunTrust to PFG's account at JPMorgan. (*Id.* ¶ 7.) On June 25, 2010, Perkins provided SunTrust with a written statement, under penalty of perjury, stating that she never authorized the PFG transaction. (*Id.* ¶¶ 8–9, Ex. A.[3]) Pursuant to that statement, SunTrust reversed the ACH debit transaction. (*Id.* ¶ 10.) JPMorgan accepted the return and transferred $95,000, which was credited to Perkins' account at SunTrust. (*Id.* ¶ 11.)

Subsequently, PFG filed suit against SunTrust alleging that the reversal of the ACH transaction was improper. (*Id.* ¶ 12, Ex. B.) SunTrust has incurred attorney's fees and other expenses defending that claim. (*Id.* ¶ 13.) SunTrust alleges that the Perkins transaction was subject to the NACHA Operating Rules governing ACH transactions. (*Id.* ¶ 14). SunTrust's complaint, however, appears to cite to the 2011 version of the NACHA Rules, even though the Perkins transaction occurred in 2010.

The court presumes that the 2010 rules apply, but SunTrust's citation to the wrong version of the rules ultimately has no impact on the disposition of this motion. *See Schmidt v. Journeymen Plumbers' Local 130*, No. 11 C 3560, 2011 WL 4901326, at *3 (N.D. Ill. Oct. 14, 2011) (observing that under federal notice pleading standards, even the failure to identify the correct statutory scheme does not doom a claim if the plaintiff has alleged sufficient facts to show that it is plausible). Although the numbering of the NACHA rules differed between 2010 and 2011, the relevant rules are substantially the same, so the difference does not affect the plausibility of SunTrust's claims. Nonetheless, SunTrust may wish to submit an amended complaint citing the 2010 version of the rules or to explain why it believes the later version applies.

In any event, the complaint alleges that PFG was the Originator of the transaction, as defined by NACHA Rule § 8.59. (*Id.* ¶ 15.) JPMorgan was the "ODFI," as defined by NACHA Rule § 8.57 (*Id.* ¶ 16.) SunTrust was the "RDFI," as defined by NACHA Rule § 8.70. (*Id.* ¶ 17.) Perkins was the Receiver, as defined by NACHA Rule § 8.68. (*Id.* ¶ 18.) JPMorgan's ACH debit was an entry, as defined by NACHA Rule § 8.33. (*Id.* ¶ 19.)[4]

SunTrust relies on two NACHA rules in particular, NACHA Rule § 2.4.1 and Rule 2.4.4.1, which provide that an ODFI transmitting an entry warrants to an RDFI that it was authorized by the Originator and Receiver, and that in the event of a breach of warranty, an ODFI shall indemnify the RDFI. (Pl.'s Compl. ¶¶ 21, 24.)

The 2010 version of the NACHA rules provide that "[e]ach ODFI sending an entry warrants . . . to each RDFI, ACH Operator, and Association [that] . . .[e]ach entry transmitted by the ODFI to an ACH Operator is in accordance with the proper authorization provided by the Originator and the Receiver." NACHA Rule § 2.2.1.1. Additionally, the rules provide:

> Each ODFI breaching any of the preceding warranties [here, § 2.2.1.1.] shall indemnify every RDFI, ACH Operator, and Association from and against any and all claim, demand, loss, liability, or expense, including attorneys' fees and costs, that result directly or indirectly from the breach of warranty or the debiting or crediting of the entry to the Receiver's account.

NACHA Rule § 2.2.3. Essentially, SunTrust contends that by transmitting the ACH debit entry as part of the

Perkins transaction, JPMorgan warranted that it was authorized. (*Id.* ¶ 22.) Because the Perkins transaction was not authorized, JPMorgan breached this warranty and must indemnify it for attorney's fees and costs. (*Id.* ¶¶ 23–25.)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint's factual allegations need not be detailed, they must provide more than "labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level." *Ruiz v. Kinsella*, 770 F. Supp. 2d 936, 941–42 (N.D. Ill. 2011) (citing *Twombly*, 550 U.S. at 555). The key question is whether the facts, accepted as true, "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). In ruling on a motion to dismiss a third-party complaint, the court accepts as true the well-pleaded allegations of both the complaint and the third-party complaint, with all reasonable inferences drawn in favor of SunTrust. *Al-Hazmi v. City of Waukegan*, 579 F. Supp. 1441, 1442 n.2 (D.C. Ill. 1984).

It is this last requirement — the general rule that the court should accept both the allegations of the complaint and the third-party complaint as true — that is at the root of JPMorgan's argument. JPMorgan relies on PFG's complaint, in which PFG brought claims for conversion, unjust enrichment, and money had and received against SunTrust. PFG alleges that SunTrust's reversal of the Perkins transaction was improper and violated PFG's right to the funds. (Pl.'s Compl. ¶ 14.) PFG additionally alleges that SunTrust wrongfully assumed control of the funds and that its retention of the funds violates equity and good conscience. (*Id.* ¶¶ 28, 36, 42.)

JPMorgan argues that because PFG's claims are based solely on SunTrust's own mistakes in handling the funds, and because these allegations must be accepted as true at this stage of the case, any potential NACHA violations by JPMorgan are irrelevant. JPMorgan reasons that third-party claims are dependent upon the success of the plaintiff's claim, *see Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 121 (E.D.N.Y. 2005), so SunTrust's third-party complaint must be dependent on PFG's claims. (Dkt. No. 58 (Third-Party Def.'s Reply, 3.)

This argument is problematic, however, because under Fed. R. Civ. P 8(d), inconsistent or alternative pleadings are allowed. While this rule applies to alternative pleadings by a single party, the principle behind it is applicable to the present case. The court sees no reason why it must accept that SunTrust's actions were wrongful in light of its third-party complaint, which alleges, in essence, that under NACHA rules it was required to reverse the Perkins transaction and JPMorgan is required to indemnify it. When ruling on a motion to dismiss, the court is required to view the facts in the light most favorable to SunTrust, and JPMorgan's argument would turn that requirement on its head. *See Fedorchak v. Montgomery Ward*, 18 F.R.D. 1, 3 (M.D. Pa. 1955) (refusing to dismiss third-party complaint merely because its allegations were inconsistent with those in plaintiff's complaint).

Additionally, JPMorgan relies on the Arkansas Supreme Court's ruling in *MANA*, 58 S.W.3d at 368, in which the Bank of Arkansas unsuccessfully brought suit against First Union National Bank for indemnification under the NACHA rules. In *MANA*, on Oct. 10, 1997, First Union credited MANA Corp.'s account with a payment from its customer, MCI WorldCom. *Id.* at 367. Four days later, at MCI WorldCom's instruction, First Union reversed the deposit. *Id.* Bank of Arkansas notified MANA of this reversal, and nothing came of it at the time. *Id.* About seven months later, on April 6, 1998, First Union deposited $175,169 in MANA's Bank of Arkansas account at the direction of MCI WorldCom. *Id.* That same day, MANA directed Bank of Arkansas to transfer that amount to MANA's account at a different bank. *Id.* Bank of Arkansas did so, but neglected to debit MANA's account until May 20, 1998. *Id.* at 367–68. This ultimately resulted in MANA's Bank of Arkansas account being overdrawn in the amount of $171,669, and the bank demanded payment from MANA in that amount. *Id.* at 368. MANA agreed to pay only $21,669, contending that First Union's reversal of the MCI WorldCom transaction was the cause of the

| STATEMENT |
|---|

overdraft. *Id.*

Bank of Arkansas filed suit against MANA for breach of contract and brought a claim against First Union for indemnification under NACHA Rule 2.5.2, which provided, in relevant part, that each ODFI "shall indemnify" every RDFI "from and against any and all claim, demand, loss, liability or expenses, including attorney's fees and costs, that result directly or indirectly from the crediting or debiting of a reversing entry initiated by an originator through the ODFI." *Id.*

Affirming the trial court's grant of summary judgment to First Union, the Arkansas Supreme Court found that the reversal of the October 1997 WorldCom transaction was too remote in time to be the source of Bank of Arkansas' loss. *Id*. at 369. The court added, "Any loss suffered by Bank of Arkansas was obviously directly and solely due to Bank of Arkansas's own mistakes in mishandling MANA's checking account . . . ." *Id.*

The court agrees with SunTrust that *MANA* is plainly distinguishable because of the remoteness in time between First Union's reversal of the WorldCom transaction and the overdrawing of the MANA account. Further, SunTrust is correct that even if it handled the Perkins transaction improperly, that does not necessarily negate the NACHA warranty provision in § 2.2.3. *Sec. First Network Bank*, 2003 WL 22299011, at *6, is instructive on this point. In that case, an ODFI, Security First Network Bank was sued for breaching warranties in the 2000 NACHA Operating Rules. *Id.* at *1. The RDFIs in that case were two banks whose customers had been defrauded by a customer of Security First. *Id.* The RDFIs sought indemnification from Security First under NACHA Rule § 2.2.1.1., which then, as in 2010, provided that an ODFI sending an entry warrants to the RDFI that the entry "is in accordance with the proper authorization provided by the Originator and Receiver." *Id.* at *3. The RDFIs argued that Security First breached this provision, triggering the indemnification provision in NACHA Rule §2.2.3. *Id.*

Security First argued, in part, that the RDFIs were negligent, so the warranty provision should not apply. *Id.* at *10. Rejecting that argument, the court noted that the plain language of the warranty provision in required an ODFI to indemnify an RDFI against "any and all" claims resulting "directly or indirectly from the breach of warranty or the debiting or crediting of the entry to the Receiver's account." *Id.* The same broad language is at issue here. Because SunTrust has adequately alleged that PFG's claims resulted, either directly or indirectly, from JPMorgan's alleged breach of warranty, the third-party complaint can go forward. JPMorgan's motion to dismiss is denied. The scheduling order set by this court on Feb. 6, 2012, remains in effect.

*James F. Holderman*

---

1. PFG initially filed two related complaints in state court – the complaint against the banks in this case and a complaint against the individuals it believed reasonable for the allegedly fraudulent transactions. The suit against the individual defendants also was removed from state court, and is pending in this court as case number 10 C 6462.

2. A read-only version of the 2011 edition of the NACHA Rules is available at http://www.achrulesonline.org at no cost to registered users. The court will apply the 2010 Rules, a copy of which was submitted at the request of the court by JPMorgan, as the transaction at issue here occurred in 2010.

3. PFG initially named Perkins in its complaint against the individual defendants in 10 C 6462, but has since dismissed her from the case. (Dkt. No. 31.)

4. Definitions for these terms can be found in Article 14 of the 2010 rules.